# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MELVIN CHAMBERS COLEMAN, JR.,<br><br>Petitioner,<br><br>v.<br><br>ROBERT LeGRAND, et al.,<br><br>Respondents. | 3:14-cv-00337-RCJ-VPC<br><br>**ORDER** |

Petitioner Melvin Chambers Coleman, Jr., a prisoner in the custody of the State of Nevada, brings this habeas action under 28 U.S.C. § 2254 to challenge his 2008 Nevada state convictions for robbery and sexual assault. (ECF No. 18.) After evaluating his claims on the merits, this Court denies Coleman's petition for a writ of habeas corpus, dismisses this action with prejudice, and denies a certificate of appealability.

## I. BACKGROUND

On May 3, 2005, Marta Flores was sexually assaulted by a man outside a building in Reno, Nevada. (Exhibit 21, at 50–51.)[1] Her four-year-old son, G.F., was sleeping in her car nearby. (*Id.* at 50.) The man then struck Flores and demanded money from her, after which G.F. exited the vehicle and shouted at the man to stop hitting his mother. (*Id.* at 57–59.)

In August 2009, following the conclusion of a three-day jury trial, Coleman was convicted of robbery and sexual assault. (Exhibits 21, 23.) Coleman was sentenced to four to ten years for the former offense and ten years to life for the latter, to run concurrently. (Exhibit 29.)

---

[1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 11–13 (Exhibits 1–63) and ECF No. 20 (Exhibits 64–68).

1

Coleman appealed, raising three claims. (Exhibit 34.) The State responded, but Coleman did not file a reply. (Exhibit 36.) The Nevada Supreme Court denied the appeal on April 8, 2010. (Exhibit 39.) Remittitur issued on May 4, 2010. (Exhibit 40.)

Coleman filed a petition for a writ of habeas corpus in state court, identifying one ground. (Exhibit 44.) After counsel was appointed, Coleman filed a supplemental petition for a writ of habeas corpus in state court, identifying six additional grounds. (Exhibit 49.) The State responded. (Exhibits 50, 51.) On April 30, 2013, following an evidentiary hearing, the state court denied the petition. (Exhibit 53.) The order was filed on May 22, 2013. (Exhibits 55, 56.)

Coleman appealed to the Nevada Supreme Court, identifying two core grounds. (Exhibit 59.) The State responded, and Coleman did not file a reply. (Exhibit 60.) On April 10, 2014, the Nevada Supreme Court denied Coleman's appeal. (Exhibit 61.) Remittitur issued on May 5, 2014. (Exhibit 61.)

Coleman then filed a federal petition for a writ of habeas corpus—the action before this Court. (ECF No. 1.) The Second Amended Petition for a Writ of Habeas Corpus is the operative document. (ECF No. 18.) In it, Coleman asserts three grounds for relief.

## II. FEDERAL HABEAS REVIEW STANDARDS

When a state court has adjudicated a claim on the merits, the Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating the state court ruling that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170 (2011). Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that the state court decision was incorrect. *Id.* at 202. Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. *Id.* at 181–88. The petitioner bears the burden of proof. *Id.* at 181.

A state court decision is "contrary to" law clearly established by the Supreme Court only if it

2

applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003). A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* The Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* And "a federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Id.* at 16. A decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *See, e.g., id.* at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). When a state court's factual findings based on the record before it are challenged, the "unreasonable determination of fact" clause of 28 U.S.C. § 2254(d)(2) controls, which requires federal courts to be "particularly deferential" to state court factual determinations. *See, e.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This standard is not satisfied by a mere showing that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court's factual findings are presumed to be correct and the petitioner must rebut that presumption by "clear and convincing evidence." In this inquiry, federal courts may not look to any factual basis not developed before the state court unless the petitioner shows: (1) that the claim relies on either (a) "a new rule of constitutional law, made

3

retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (b) "a factual predicate that could not have been previously discovered through the exercise of due diligence," and (2) that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

## III. ANALYSIS

### A. Ground 1

In Ground 1, Coleman argues that he "was deprived of his rights to due process and a fair trial under the Fifth, Sixth, [and] Fourteenth Amendments to the United States Constitutional [sic] based on the improper admission of an out-of-court statement." (ECF No. 18 at 6.) The statement Coleman challenges is a police officer's testimony that G.F. told the officer on the day of the incident "[t]hat his mother was being hit by a black man," and that he yelled: "Stop hitting my mom." (Exhibit 21, at 98–100.) Coleman claims that the statement was inadmissible hearsay under Nevada State law, specifically NRS 51.035, and its admissions made the trial fundamentally unfair. (ECF No. 18 at 6–7.) The Nevada Supreme Court rejected Coleman's claim on direct appeal "considering the significant independent evidence of guilt—including the victim's testimony and DNA evidence." (Exhibit 39 at 1–2.)

The federal courts "are not a state supreme court of errors; we do not review questions of state evidence law." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). Instead, the federal courts on habeas review care only "whether the admission of the evidence so fundamentally infected the proceedings as to render them fundamentally unfair," and thus constitutionally impermissible. *Id.* Not only must there be "*no* permissible inference the jury may draw from the evidence," but also the evidence must be "of such quality as necessarily prevents a fair trial." *Id.* at 920 (citation omitted). Whether the admission of evidence violated state law "is no part of a federal court's habeas review of a state conviction." *McGuire v. Estelle*, 502 U.S. 62, 67 (1991). In other words, the evidence is not constitutionally suspect unless it is irrelevant and has no probative value. *See id.* at 68–69.

The admission of the statement here did not render the trial fundamentally unfair. There was

at least one permissible—in a constitutional sense, not in a state-evidentiary sense—use of the testimony: it showed that G.F.'s story had not changed between the date of the incident and the date of the trial, when G.F. testified to almost precisely the same thing. (*See* Exhibit 21 at 92–95.) Moreover, even if there were no constitutionally permissible uses of the statement, its admission did not render the trial fundamentally unfair because it did no more than show that G.F.'s story had not changed between the date of the incident and the date of the trial. The jury still had to believe G.F.'s version of events.

Additionally, G.F.'s version of events did not stand alone. Flores testified that Coleman raped and robbed her, and confirmed G.F.'s statement that he was hitting her and that G.F. yelled out for him to stop. (*Id.* at 50–60.) The DNA evidence showed that a condom found at the crime scene had Flores's DNA on one side and Coleman's on the other. (*Id.* at 208–10.) The sexual-assault examination was consistent with sexual assault as opposed to consensual sex. (*Id.* at 112–29.) The admission of the challenged statement did not render the trial fundamentally unfair.

Ground 1 provides no basis for habeas relief.

**B.     Ground 2**

In Ground 2, Coleman argues that he "was deprived of his rights to due process and a fair trial under the Fifth, Sixth, [and] Fourteenth Amendments to the United States Constitutional [sic] when the court failed to grant a continuance after the local paper incorrectly identified Coleman as having been convicted of committing [a] drug crime and eluding an officer." (ECF No. 18 at 7.) Coleman's father, Melvin Charles Coleman, Sr., was convicted of eluding a police officer and possession of a controlled substance in June 2009. (Exhibit 34 at 7.) On July 31, the *Reno-Gazette Journal* published an article detailing Coleman, Sr.'s convictions, criminal history, and two sentences to life in prison for habitual criminality. (*See* Exhibit 21 at 8–9.) The article included a picture, although it was of Coleman, Jr. (*See id.* at 9.) On August 3, 2009, Coleman, Jr.'s trial counsel asked for a "very brief continuance" to put "a little distance between the newspaper article and [the] trial." (*Id.* at 9–10.) He was concerned that someone called as a juror on a Monday would pick up the crime section of the *Journal* on the Friday before, and he did not "think there [was] any

way to unring that bell." (*Id.* at 10.) Regardless of how counsel or the court explained this to the jury, trial counsel worried the jurors would say amongst themselves, "[T]he apple doesn't fall very far from the tree, like father like son or, something like that." (*Id.* at 11.) The State preferred dealing with it in *voir dire*. (*See id.*) The court, because everything was already set up for trial including the jury pool, sided with the State, noting that it could just tell the jurors that there was an article on Friday indicating a man with a similar name to the defendant was sentenced to prison, but that it was not the defendant. (*See id.* at 12.) On direct appeal, the Nevada Supreme Court rejected Coleman's claims because there was no abuse of discretion and the record "does not show that any of the jurors was aware of the article, much less that the jury could not be impartial." (Exhibit 39 at 2.)

The U.S. Constitution guarantees each person "a panel of impartial, 'indifferent' jurors." *Murphy v. Florida*, 421 U.S. 794, 799–800 (1975) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1962)). "Due process requires that the accused receive a trial free from outside influences." *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). Courts must determine whether "there is a reasonable likelihood that [the outside influence] will prevent a fair trial." *Id.* at 363. In determining if a defendant received that, reviewing courts give deference to the trial court's determinations of juror impartiality. *See Skilling v. United States*, 561 U.S. 358, 387 (2010). That deference is "double" on federal habeas review. *See Smith v. Mitchell*, 624 F.3d 1235, 1239 (9th Cir. 2010).

The state trial court did not transcribe the *voir dire*. (*See* Exhibit 21 at 24 ("(Whereupon the jury panel was selected.)")). Nonetheless, other indicia of the record confirm the Nevada Supreme Court's observation that there was no evidence that the article impugned the jury's impartiality and, more importantly, the record confirms that there was no probability of an improperly influenced jury. First, Coleman does not contend that *voir dire* showed that any juror had even read the article. Second, even if the jurors were aware of the article, the trial court admonished the jury not to read the article and that it "is not going to be important to this case. It is utterly unrelated to Mr. Coleman who sits here as a party to this case." (*Id.* at 25.) Third, it was a "very small article," not prominently featured in the newspaper, and its actual content did not carry with it a "high potential for prejudice." (*Id.* at 14.) *Murphy*, 421 U.S. at 797. Certainly, there is nothing in the article to make unreasonable

the Nevada Supreme Court's determination that it did not prejudice the jury. In short, there was not a "reasonable probability" that the article would have prevented, or did prevent Coleman from receiving a fair trial. *Sheppard*, 384 U.S. at 363. Therefore, the Nevada Supreme Court's decision that the jury was impartial and that the trial was not fundamentally unfair did not run afoul of U.S. Supreme Court law or involve an unreasonable determination of fact.

Ground 2 provides no basis for habeas relief.

**C.     Ground 3**

In Ground 3, Coleman argues that he "was deprived of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution." (ECF No. 18 at 9.) To succeed on a typical ineffective assistance of counsel claim on direct appeal, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts evaluate a counsel's performance from counsel's perspective at the time and begin with a strong presumption that counsel's conduct was well within the wide range of reasonable conduct. *See, e.g., Beardslee v. Woodford*, 358 F.3d 560, 569 (9th Cir. 2004). When a state court has reviewed a *Strickland* claim, a federal court's habeas review is "doubly deferential"—the reviewing court must take a "highly deferential" look at counsel's performance through the also "highly deferential" lens of § 2254(d). *Cullen*, 563 U.S. at 190, 202.

Coleman alleges a panoply of reasons that he received ineffective assistance of counsel, but they can be placed in two categories: (1) "failing to move to dismiss the case for excessive pre-indictment delay," (ECF No. 18 at 9–11), and (2) "failing to object to numerous instances of prosecution misconduct during closing argument," (ECF No. 18 at 11–14).

**1.     Failing to move to dismiss the case for pre-indictment delay**

Coleman argues that his trial counsel was ineffective for failing to move to dismiss the case for pre-indictment delay. The crime occurred on May 3, 2005, but the State did not file the criminal complaint until October 14, 2008, just over seven months after Coleman's name first came up in

7

relation to the case because the used condom left at the crime scene matched a DNA sample taken from Coleman for an unrelated reason. (*See* Exhibit 2 at 196; Exhibit 21 at 196.) To succeed on a motion to dismiss a complaint based on pre-indictment delay, Coleman's trial counsel would have needed to demonstrate that (1) the government's delay in bringing the indictment was a deliberate device to gain an advantage over the defendant or otherwise done in bad faith, and (2) that delay resulted in actual prejudice in presenting his defense. *See United States v. Gouveia*, 467 U.S. 180, 192 (1984); *Wyman v. State*, 217 P.2d 572, 578–79 (Nev. 2009).

The Nevada Supreme Court held that Coleman failed to establish either of these two prongs to show that a dismissal would have been reasonably expected; it held that Coleman "fail[ed] to demonstrate that actual, nonspeculative prejudice resulted from the delay or that the State intentionally delayed filing a complaint to gain a tactical advantage." (Exhibit 61 at 2.)

Coleman's trial counsel testified that he looked into the issue of pre-indictment delay, but decided not to raise it because he "didn't think it was a winning argument." (Exhibit 53 at 17.) In fact, as soon as he got the case, it was "the first thing [he] did . . . because there was a huge time delay." (*Id.* at 26–27.) He "put a ton of time into" the case, but decided that this was not a viable argument. (*Id.* at 17.) And for good reason. As he testified, the police did not know who had committed the rape until years after the fact. (Exhibit 53 at 23.) The police did not have the funding to run the DNA analysis until a windfall came in. (*See id.*) At which point, the test was done and the county crime lab matched a sample of Coleman's DNA, which it had in its possession for unrelated reasons, with the DNA from the used condom found at the crime scene on March 10, 2008. (*See* Exhibit 21 at 196.) The State filed the criminal complaint against Coleman just over seven months later on October 14, 2008. (Exhibit 2.)

Coleman argues that the State had his DNA as early as September 2006 and, for "no explanation," did not act on it until August 2008. (ECF No. 18 at 11.) But funding issues provide an obvious "explanation," as testified to by Coleman's trial attorney, whose judgment Coleman now calls into question. (*See* Exhibit 53 at 23.) Nonetheless, Coleman contends, without supporting evidence, that the State manufactured a delay in order to "allow one of [its] star witnesses, G.F., to

8

become older so that he would more easily be confirmed as a witness." (ECF No. 18 at 11.) If Coleman's argument were to be accepted, then every time the prosecution had a child as witness, the defendant would be able to show that any prosecutorial delay was intentional. That is unreasonable in the abstract, and unreasonable here. With DNA evidence and the victim's testimony, the State would be unlikely—and indeed, unreasonable—to wait to test the evidence, and meanwhile leave a rapist and robber on the streets, based on some vague potential for an incremental increase in the value of one witness's testimony.

Therefore, Coleman has failed to show that the Nevada Supreme Court was unreasonable in concluding that the delay was not the result of tactical considerations, or that trial counsel was constitutionally ineffective for opting not to move for dismissal based on the delay. In light of the circumstances, trial counsel's choice not to move for dismissal did not amount to ineffective assistance, as there is simply no indication that the government delayed in bad faith or in order to gain an advantage over Coleman.

Accordingly, this Ground provides no basis for habeas relief.

### 2. Failing to object to prosecutorial misconduct during closing arguments

Lastly, Coleman argues that trial counsel was ineffective because he failed to object during closing arguments when the prosecutor made statements that "improperly inflamed the passions of the jury," "stated and implied that the defendant is a liar," "improperly inserted [the prosecutor's] own opinions," and "improperly commented on the right to remain silent." (ECF No. 18 at 11–13.) The Nevada Supreme Court held that Coleman failed to demonstrate either *Strickland* prong. (Exhibit 61 at 2–3.)

To the extent that the prosecutor's statements were in fact objectionable, as some of them likely were, trial counsel explained why he did not object to the statements: "In my experience, when you raise an issue a second time, the jury simply remembers that more than anything else." (Exhibit 53 at 15.) He explained that he based this understanding on the fact that, before turning to the defense side, he was a prosecuting attorney for eleven years. (*Id.* at 21.) Beyond drawing extra attention to the objected-to statement, objecting would allow the prosecutor to explain the objected-

to statements, which he did "not normally" find "advantageous to [his] client[s]." (*Id.* at 23.) While objections to some of the statements that Coleman identifies likely would have been sustained, it was nonetheless reasonable for trial counsel to determine that the cost of those objections would have been too great given the potential for prejudicial impact. Counsel's approach at trial was reasonably strategic. *See, e.g., Bray v. Premo*, 605 Fed. App'x 631, 633 (9th Cir. 2015) (accepting as a "reasonable strategic decision" the choice "not to object to avoid drawing the jury's attention"); *cf. Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) ("[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage."). Even if this Court thinks that trial counsel should have acted differently, a reasonable strategy does not amount to ineffective assistance of counsel. *See Strickland*, 466 U.S. at 699 ("Counsel's strategy choice was well within the range of professionally reasonable judgments . . . .").

Ground 3 provides no basis for habeas relief.

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED on the merits, and this action is DISMISSED with prejudice.[2]

Because reasonable jurists would not find this decision to be debatable or incorrect, IT IS FURTHER ORDERED that a certificate of appealability is DENIED. The Clerk of Court is directed to enter judgment, in favor of respondents and against Coleman, dismissing this action with prejudice.

IT IS SO ORDERED. SEPTEMBER 18, 2017.

_____
Robert C. Jones
United States District Judge

---

[2] A petitioner may not use a reply to an answer to present additional claims and allegations that are not included in the federal petition. *See, e.g., Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). To the extent that Coleman has done so in his federal reply, this Court does not consider these additional claims and allegations.

10